IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                                No. CR 96-629 MV

DAVE MILTON HAMMONS,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's Motion to Suppress Warrantless Search, filed December 18, 1996 **[Doc. No. 19]**. The Court, having held an evidentiary hearing, considered the pleadings and relevant law, and being otherwise fully advised finds that the motion is well taken and will be **granted.**

### Background

This is an inventory search case, having its roots in a single vehicle accident occurring on New Mexico's highways on September 21, 1996. At approximately 1:00 am, Mr. Hammons was traveling eastbound on Interstate 40 near Gallup in a rental car when he fell asleep at the wheel. The car left the highway, rolled, and came to rest on its side on private property some distance from the interstate. Mr. Hammons escaped serious injury, but to the ambulance personnel who responded at the scene complained of pain to his shoulder, head, and stomach. McKinley County Deputy Sheriff

Christopher MacLaine also responded to the accident, and testified that Mr. Hammons, who had left his car, appeared dazed, showed signs of injuries toward his shoulders, and had blood coming from the lower portion of an ear. However, Deputy MacLaine did not put in his report that Mr. Hammons appeared dazed and confused. Furthermore, Mr. Hammons was able to provide Deputy MacLaine his name, date of birth, and Social Security number. Deputy MacLaine also testified, and the Government admitted in its pleadings, that when Mr. Hammons refused to go to the hospital at the suggestion of ambulance personnel, Deputy MacLaine threatened him with arrest for reckless driving, so that he would be taken to the hospital while in police custody. Although Deputy MacLaine disputes this allegation, Mr. Hammons testified that Deputy MacLaine went so far as to place a handcuff on him when he threatened him with arrest. Faced with the possibility of arrest, Mr. Hammons agreed to go in the ambulance to the hospital for treatment, despite his initial refusal to do so and his desire to stay with his car.

In attempting to show that he had a legitimate expectation of privacy in the rental car, *see United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998), Mr. Hammons testified that his business partner had secured the rental car in California, for purposes of transporting antiques and artwork which Mr. Hammons and his partner had purchased or accepted on consignment in California for sale in the Midwest. Mr. Hammons explained that he did not know whether he was listed as an additional driver on the rental contract, but assumed that he was since his partnership had rented vehicles from the same location in California several times, always purchased insurance from the rental company, and that such insurance necessitated the listing of Mr. Hammons as an additional driver. Mr. Hammons also stated that typically he and his partner would travel together to share the driving, but that on this particular trip his partner had flown ahead in order to attend a meeting,

2

leaving Mr. Hammons to drive back alone. The Government did not produce the rental contract, and other than alluding at oral argument that Mr. Hammons was not listed as a secondary driver offered no evidence disputing Mr. Hammons' lawful possession of the rental car. The Government did succeed, however, in having Mr. Hammons admit on cross-examination that he was not present when the car was rented.

Following Mr. Hammons' departure in the ambulance, Deputy MacLaine then impounded Mr. Hammons' car, performing an inventory search in the process. The car contained antiques and artworks, the value of which Mr. Hammons estimated at between ten and twelve thousand dollars. During that search, Deputy Hammons found, in luggage belonging to Mr. Hammons, syringes, some marijuana, and several packages later shown to allegedly contain methamphetamine. The one count indictment in this case charges Mr. Hammons with possession with intent to distribute one kilogram and more of a substance containing methamphetamine.

Both in his pleadings and at the motion hearing, Mr. Hammons argued that the inventory search Deputy MacLaine conducted was improper since Mr. Hammons' vehicle had been unlawfully impounded. The Court agrees.

**Discussion**

Although not having raised the issue in its response to the motion, the Government first argued at the hearing that Mr. Hammons did not have standing to challenge the inventory search of the rental car, citing *United States v. Jones*, 44 F.3d 860 (10th Cir. 1995); *United States v. Roper*, 918 F.2d 885 (10th Cir. 1990); *United States v. Erwin*, 875 F.2d 268 (10th Cir. 1989)*; Unites States v. Obregon*, 748 F.2d 1371 (10th Cir. 1984); and *United States v. Erickson*, 732 F.2d 788 (10th Cir. 1984). Of these cases, *Obregon* comes the closest to holding that, at any time where a rental car is

3

at issue, only a listed driver has Fourth Amendment standing to challenge a search, even where an unlisted driver has the permission from a renter to use a car. *See Obregon*, 748 F.2d at 1374-75. Yet the Court need not examine the nuances of *Obregon* as its holding would apply to the facts here, nor launch into an analysis of whether an agency or bailment situation could constitute lawful possession, *see United States v. Kye Soo Lee*, 898 F.2d 1034, 1038 (5th Cir. 1990), for even if Mr. Hammons did not have standing to challenge the search of the car, he had standing to challenge the search of his luggage. *See United States v. Martinez*, 983 F.2d 968, 973 (10th Cir. 1992); *see also United States v. Hardy*, 162 F.3d 1174, 1998 WL 704706 (10th Cir. 1998) (unpublished disposition having persuasive value on a material issue). Moreover, the inventory search of the car in this case flowed from the coercion Deputy MacLaine placed on Mr. Hammons, and Mr. Hammons certainly has standing to challenge the seizure of his person. *Martinez*, 983 F.2d at 974.

The salient facts of this case are undisputed. Although Mr. Hammons was injured and ambulance personnel recommended a hospital evaluation, Mr. Hammons declined transport to the hospital and wished to remain with his car. The Government freely admitted in its response and at argument that Deputy MacLaine threatened Mr. Hammons with arrest, for the express purpose of transporting him to a hospital, if he refused to willingly board the ambulance. In his testimony, Deputy MacLaine confirmed this admission, stating both that he threatened Mr. Hammons with arrest for purposes of providing him with medical care and that, had Mr. Hammons remained with his vehicle, Deputy MacLaine would not have impounded it or performed an inventory search. Deputy MacLaine further stated, and the Government concedes, that he did not at any time consider the accident for anything other than it appeared and never suspected that the car contained narcotics. Deputy MacLaine also admitted that he had no authority, under the facts as he saw them on the night

of September 21, 1996, to arrest Mr. Hammons for a traffic offense that did not occur in his presence. Mr. Hammons presented expert testimony on New Mexico's Uniform Health-Care Decisions Act, N.M. Stat. Ann. § 24-7A-1 (Michie 1997) opining that police could not order, under Mr. Hammons' circumstances, him to undergo medical treatment. Indeed, the act creates a statutory presumption of capacity for making health care decisions that can only with great difficulty be overcome. *See id.* § 24-7A-11. Thus, without any authority to arrest Mr. Hammons or order him transported to a hospital, Deputy MacLaine threatened to do so, and obtained the removal of Mr. Hammons from his car as a direct result of that threat. Deputy MacLaine crossed a line the Fourth Amendment has drawn. *See Hayes v. Florida*, 470 U.S. 811, 812-13 (1985); *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

In a vain effort to salvage what was, based on the undisputed testimony, plainly an untenable position, the Government argued at the hearing that, under *Colorado v. Bertine*, 479 U.S. 367 (1985), the conduct of Deputy MacLaine in insisting that an injured person receive medical attention was reasonable, thus allowing for an inventory search of Mr. Hammons' car. *Bertine* can provide the Government no solace, however, for in *Bertine* the lawful arrest of a driver was never an issue. *Id.* at 368-69. In looking to whether an inventory search is reasonable, a necessary step must be a determination, whether implicit or explicit, that police have lawfully impounded a vehicle. *See United States v. Pappas*, 735 F.2d 1232, 1234 (10th Cir. 1984); *United States v. Ibarra*, 955 F.2d 1405 (10th Cir. 1992); *United States v. Roth*, 944 F. Supp. 858, 861-63 (D. Wyo. 1996). Police may not directly impound a vehicle and conduct an inventory search without a lawful basis for detaining that vehicle in the first place. *See South Dakota v. Opperman*, 428 U.S. 364, 373 (1976).

The Government also argued that the Court should not fault a police officer who came to the

aid of a motorist who was demonstrably injured. The Government misses the point. To give validity to the Government's argument would be to grant police a broad paternalistic license to compel, at their discretion, citizens to be admitted to a hospital whenever officers thought treatment necessary. The Court is not faulting the police aid of a citizen who through good fortune escaped serious injury, the Court is faulting the unconstitutional conduct of a police officer who took away the decision-making authority for medical treatment from a competent adult.

Even if this Court could somehow torture the undisputed facts in this case to construe from them a conclusion that Deputy MacLaine lawfully impounded Mr. Hammons' car, the Court would be bound to suppress pursuant to *Florida v. Wells*, 495 U.S. 1 (1990). Because an inventory search is an exception to the Fourth Amendment's warrant requirement, *Bertine*, 479 U.S. at 371, the Government bears the burden of showing "that the requirements of the inventory search exception have been met." *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992); *Ibarra*, 955 F.2d at 1408. This the Government has not done.

In *Wells*, the Supreme Court addressed the issue, partly left open by *Bertine*, of the scope of a police officer's discretion in performing an inventory search, where police opened a locked suitcase found in the trunk of a car. *Wells*, 495 U.S. at 2. Rejecting the Florida Supreme Court's interpretation of *Bertine* to mean that *Bertine* mandates a policy of opening either all or none of the containers in a vehicle, the Court held in part that, because Florida police had "no policy whatever with respect to the opening of closed containers encountered during an inventory search," *id.* at 4-5, the evidence disclosed by the opening of the suitcase was properly suppressed. *Id.* at 5. *Wells* and *Bertine*, then, together teach that while police may have a policy of opening all closed containers during an inventory search, *id.* at 4, and that police policy may extend to officers on the scene the

6

discretion to selectively open some containers, *id.*, there must exist a policy, *id.* at 5, where "discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375.

In Mr. Hammons' case the Government did not meet its burden of showing the existence of such a policy. The Government tried to show, through the testimony of Deputy MacLaine, that the McKinley County Sheriff's Department had a policy of performing inventory searches on vehicles that they impounded. Deputy MacLaine testified to the existence of a written policy concerning inventory searches, but stated that the only policy for the actual taking of an inventory was the one-page inventory form used in Mr. Hammons' case. Deputy MacLaine did not produce any other written policies. Defense investigator Mr. Eduardo Contreras testified that he contacted the McKinley County Sheriff's Department, spoke to Sheriff Frank Gonzales, and was told by Mr. Gonzales that the Department had no written policies or procedures regarding inventory searches, but that the Department adhered to state statutes that allegedly govern similar activities for the New Mexico State Police. The Government has not pointed, however, to any such statutes and the Court has not located one.[1] Moreover, the inventory form Deputy MacLaine used only contains a general section for "contents and accessories," Plaintiff's Exhibit 6, and provides no guidance whatever for the opening of closed containers. Under those circumstances, *Wells* mandates suppression.

**THEREFORE**,

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Warrantless Search, filed

---

[1] A search of New Mexico statutes has only revealed one which may apply to this case, directing peace officers to immediately inventory any property that comes into their possession, whether abandoned or taken under authority of law, N.M. Stat. Ann. § 21-1-13 (Michie 1997). The statute provides no guidance, however, that could be construed as establishing standard criteria relating to the opening of closed containers.

7

December 18, 1996 **[Doc. No. 19]** be, and hereby is, **granted**.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

February 25, 1999